UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY HAMILTON, on behalf of
B.I.B. and B.I.B., a minor

      Plaintiffs,

v.                                                                       Case No. 13-14833
                                                                         Hon. Denise Page Hood

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND DISMISSING ACTION**

**I.   BACKGROUND**

    **A.   Procedural History**

On November 22, 2014, Plaintiff Ashley Hamilton, on behalf of B.I.B., a minor, brought this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties filed summary judgment motions.

Hamilton filed a protective Title XVI application for child supplemental security income on December 15, 2003 on behalf of B.I.B. due to prematurity and low birth weight.  B.I.B. was born at 29 weeks, weighing at 1117 grams.  On

February 12, 2004, B.I.B. was found to be disabled with an effective onset date of December 14, 2003.

After a Continuing Disability Review determination on May 11, 2010 concluded that there had been medical improvement of B.I.B.'s medical condition, B.I.B.'s benefits were ceased effective May 1, 2010. A State Disability Hearing Officer upheld this conclusion in July 2010. On April 1, 2011, a timely written request for a hearing before an Administrative Law Judge ("ALJ") was filed. The hearing before the ALJ was held on January 31, 2012. The ALJ issued a decision on July 3, 2012, finding that B.I.B.'s disability ended as of May 1, 2010 and B.I.B. has not become disabled since that date. (Doc. No. 7, Tr. 19-24) The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Doc. No. 7, Tr. 1-6)

    **B.    Evaluations/Reports/Medical Record**

N. Doss, M.D., performed a consultative evaluation on March 31, 2010 noting that B.I.B. suffered from mild to moderate intermittent asthma, which was under control with Albuterol and Flovent. (Doc. No. 7, Tr. 293) Dr. Doss noted that B.I.B. had been hospitalized twice for her asthma at 18 months and at 2 years old. (Doc. No. 7, Tr. 292) Dr. Doss noted that B.I.B's main triggers for her asthma were weather changes. (Doc. No. 7, Tr. 292) Dr. Doss indicated that

B.I.B.'s weight was between the 75th to 95th percentiles for her age, and her height was at the 95th percentile for her age. (Doc. No. 7, Tr. 293)

On May 10, 2010, Muhammad Khalid, M.D. completed a childhood disability evaluation form indicating that B.I.B. had a severe impairment (asthma), which did not meet, medically equal, or functionally equal the listing. (Doc. No. 7, Tr. 305-310) Muhammad Ahmad, M.D. also completed a childhood disability evaluation form which came to the same conclusion. (Doc. No. 7, Tr. 320-25) Both doctors indicated that B.I.B. had no limitations in any domain, except health and well-being, and both noted that B.I.B. had less than marked limitations in that domain. (Doc. No. 7, Tr. 307-08 and 322-23)

B.I.B.'s kindergarten and gym teachers indicated in a June 2010 report that B.I.B. had been absent 44 days during the school year and was often tardy. (Doc. No. 7, Tr. 175) The teachers stated no problems in any domain except moving about and manipulating objects, and health and physical well-being. (Doc. No. 7, Tr. 176-82) The teachers indicated B.I.B. was a good student who "at times" complained of chest pain and trouble breathing, and that the inhaler helped her symptoms. (Doc. No. 7, Tr. 179) They noted that B.I.B.'s asthma symptoms were triggered by running, climbing, or jumping, and that B.I.B. sat out of gym class 60% of the time. (Doc. No. 7, Tr. 179)

The second grade school records indicate that B.I.B. had one afternoon absence and was tardy 13 times. (Doc. No. 7, Tr. 204) B.I.B.'s second grade teacher indicated B.I.B. was sometimes short of breath, but took medication which improved her breathing. (Doc. No. 7, Tr. 223) B.I.B. did not miss school that much due to her asthma, and that B.I.B. was a great student. (Doc. No. 7, Tr. 223)

The record shows that there were several visits to Highland Park Medical Services by B.I.B. for respiratory and related issues. (Doc. No. 7, Tr. 272 (10/4/09), 274 (10/19/07), 311 (6/14/10), 312 (4/15/10), 317 (3/26/10), 319 (10/4/09), 328 (6/4/2010), 329 (11/17/10), 415 (1/4/12), 416 (8/5/11), 418 (1/17/11), 423 (6/14/2010).

B.I.B. was seen at the Children's Hospital Emergency Department several times. (Doc. No. 7, Tr. 260-63 (7/25/07), 282-91 (3/16/10), 295-304 (4/25/10), 359-60 (10/24/04), 362-63 (10/31/04), 365-66 (2/27/05), 367-69 (4/5/05), 374-78 (4/1/05) 380-82 (4/8/05), 386-89 (6/3/05), 390-91 (1/21/06), 392-93 (8/25/06), 394-95 (11/21/06), 396-97 (7/25/07), 402-403 (5/11/08), 404-05 (5/30/09)

**C.     Hearing Testimony**

At the time of the hearing on February 2, 2012, Plaintiff indicated B.I.B. was eight years old and attended school full time. (Doc. No. 7, Tr. 37-38) Plaintiff testified that B.I.B. missed a lot of school, mostly in the afternoon because of the

4

asthma. (Doc. No. 7, Tr. 38) She indicated that the teacher's questionnaire from 2010 noted B.I.B. missed 44 days of school. (Doc. No. 7, Tr. 39) Out of the 44 missed school days, Plaintiff testified that 40 days were due to asthma treatments or doctor appointments. (Doc. No. 7, Tr. 39-40) Plaintiff indicated that the teacher also noted 41 tardies due to Plaintiff giving B.I.B. nebulizer treatments in the morning when B.I.B. had trouble breathing. (Doc. No. 7, Tr. 39)

Plaintiff testified that on several occasions, Plaintiff would first take B.I.B. to the doctor's office and then the doctor would tell her to take B.I.B. to the emergency room if the asthma was severe. (Doc. No. 7, Tr. 40) When the asthma triggered at night, then Plaintiff would take B.I.B. to the emergency room. (Doc. No. 7, Tr. 40) Plaintiff testified that B.I.B. took daily medications for her asthma, including two inhalers (a steroid/ProAir and a "regular" inhaler/Ventolin) and Singulair every night in the form of a pill. (Doc. No. 7, Tr. 40-41) About four times a year, Plaintiff testified that B.I.B. is prescribed Prednisone, which lasts for 10 days. (Doc. No. 7, Tr. 42-43) B.I.B. also receives cough medicine/Rondec when she is coughing. (Doc. No. 7, Tr. 45-46)

At school, Plaintiff testified that B.I.B. would complain about asthma attacks after having recess outside right after lunch. B.I.B. missed four days in the afternoon just after recess because of asthma attacks. (Doc. No. 7, Tr. 43) Plaintiff

5

had to submit a doctor's note so that B.I.B. would not have to go outside for recess, no matter what the weather was. (Doc. No. 7, Tr. 43) Since the submission of the doctor's note, B.I.B. has not been sent outside for recess and there has been no episode which required Plaintiff to come to the school. (Doc. No. 7, Tr. 50) B.I.B. participates in gym class once a week where she runs around the gym and plays games. (Doc. No. 7, Tr. 45) B.I.B. is out of breath during gym, but she has to participate or she will receive a failing grade. (Doc. No. 7, Tr. 45) When B.I.B. is at home playing with other children, she coughs when she has been running around outside. (Doc. No. 7, Tr. 47)

B.I.B. testified that she used both inhalers at school every day during lunchtime. (Doc. No. 7, Tr. 50) After she uses her inhalers, B.I.B. indicated she feels better. (Doc. No. 7, Tr. 51)

## II. ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited in scope to determining whether the Commissioner employed the proper legal criteria in reaching his conclusion. *Garner v. Heckler,* 745 F.2d 383 (6th Cir. 1984). The credibility findings of an administrative law judge ("ALJ") must not be discarded lightly and should be accorded great deference. *Hardaway v. Secretary of Health*

*and Human Services*, 823 F.2d 922, 928 (6th Cir. 1987). A district court's review of an ALJ's decision is not a de novo review. The district court may not resolve conflicts in the evidence nor decide questions of credibility. *Garner*, 745 F.2d at 397. The decision of the Commissioner must be upheld if supported by substantial evidence, even if the record might support a contrary decision or if the district court arrives at a different conclusion. *Smith v. Secretary of HHS*, 893 F.2d 106, 108 (6th Cir. 1984); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

A child under age eighteen will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). For a continuing disability review of a child who has yet to attain the age of eighteen, a three-step sequential evaluation process is conducted. 20 C.F.R. § 416.994a(b).

At step 1, the ALJ must determine whether there has been a medical improvement in the impairment(s) that was present at the time of the most recent favorable determination or decision (the comparison point decision "CPD"). 20 C.F.R. § 416.994a(b)(1). If there has been no medical improvement in the CPD impairment(s), the child's disability continues. If there has been medical improvement, the ALJ must proceed to step 2.

At step 2, the ALJ must determine whether the CPD impairment(s) still meets or medically or functionally equals "the severity of the listed impairment" that it met or equaled at the time of the CPD. 20 C.F.R. § 416.994a(b)(2). If the CPD impairment(s) still meets or medically or functionally equals the severity of the listing considered at the CPD, the child is still disabled. If the CPD impairment(s) does not still meet or equal the severity of that listed impairment, the ALJ proceeds to step 3.

At step 3, the ALJ determines whether the child is currently disabled, considering all *current* impairments. 20 C.F.R. § 416.994a(b)(3). The ALJ must determine if the child's current impairment(s) is severe, as defined in 20 C.F.R. § 416.924(c). If the impairment(s) is not severe, the ALJ must find that the child's disability has ended.

If the impairment(s) is severe, the ALJ must consider whether it meets or *medically* equals a listing. 20 C.F.R. §§ 416.924(d), 416.925, 416.926. If it does, the child's disability continues. If not, the ALJ must consider whether it *functionally* equals the listings. 20 C.F.R. § 926a. If it does, the child's disability continues. If not, the child's disability has ended.

A child claimant *medically* equals a listing when the child's impairment is "at least equal in severity and duration to the criteria of any listed impairment," but

must meet all the specified medical criteria. 20 C.F.R. § 416.926(a). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530-32 (1990).

The regulations provide six domains that an ALJ must consider when determining whether a child *functionally* equals the listings: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and, 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The claimant must exhibit an extreme limitation in at least one domain, or a marked impairment in two domains to establish functional equivalency to the listings. 20 C.F.R. § 416.926a(d). "Marked" limitation in a domain means the impairment interferes with the claimant's ability to initiate, sustain, or complete activities. It also means a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 419.926a(e)(2)(i). "Extreme" limitation in a domain means the impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. It also means a limitation that is "more than marked," but does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3)(i).

The ALJ must consider the medical opinion evidence in the record when evaluating a child disability claim. 20 C.F.R. § 416.927(c)(2). The ALJ also considers the opinions of non-examining sources, such as state agency medical consultants, and other medical opinions in the record. 20 C.F.R. § 416.927(e)(2)(i-ii). The ALJ must also consider other evidence on the record, such as information from the child's teachers and how well the child performs daily activities in comparison to other children the same age. 20 C.F.R. § 416.926a(a).

B.  **Reviewing the ALJ's Determination**

1.  **Steps 1 and 2**

Plaintiff argues that the Commissioner's decision must be reversed because the ALJ did not apply the proper standard of review and the findings were not supported by substantial evidence. The Commissioner asserts that the proper standard was applied by the ALJ and the findings were supported by substantial evidence.

The ALJ found that the most recent favorable medical decision or the CPD was dated February 12, 2004, two months after B.I.B. was born prematurely. At the time of the CPD, B.I.B. had the following medically determinable impairments: prematurity, low birth weight. The impairments were found to functionally equal the listings in 20 C.F.R. §§ 416.924(d) and 416.926a. (Doc. No. 7, Tr. 23) The

ALJ found that medical evidence supports a finding that, as of July 10, 2010, there had been a decrease in medical severity of the impairments present at the time of the CPD. The ALJ noted that B.I.B.'s weight was at the 75-90th percentile, and the height was at the 95th percentile. (Doc. No. 7, Tr. 23) The ALJ concluded that B.I.B.'s growth impairment no longer functionally equaled the listing and was within normal limits. (Doc. No. 7, Tr. 23-24) The Court finds that based on the medical record, the ALJ's conclusion as to steps 1 and 2, is substantially supported as B.I.B.'s growth impairment present at the time of the CPD is no longer functionally equal to the listing.

### 2. Step 3: Medically Equals Listing

The ALJ proceeded to step 3, addressing B.I.B.'s *current* impairment, which as of May 1, 2010, was severe asthma. (Doc. No. 7, Tr. 24) The ALJ found that since May 1, 2010, B.I.B. has not had an impairment or combination of impairments that met either medically or functionally equals the listings. (Doc. No. 7, Tr. 24-27)

As to whether the asthma medically met the listings, the ALJ noted the records from Children's Hospital of Michigan which reflect treatment due to upper respiratory infections and asthma exacerbations. (Doc. No. 7, Tr. 25) The ALJ noted that during the March 2010 consultative examination, B.I.B.'s mother

admitted that B.I.B. had not required a hospital admission due to asthma since the age of 2 years old. (Doc. No. 7, Tr. 25) The ALJ found that although there were emergency room visits for asthma, B.I.B.'s symptoms were readily treated. (Doc. No. 7, Tr. 25) The attacks were noted to be triggered by weather changes and that the symptoms were under good control with treatment. (Doc. No. 7, Tr. 25) The physical examination was unremarkable. (Doc. No. 7, Tr. 25) The ALJ concluded that B.I.B.'s asthma is not currently disabling, is controlled with medication, and B.I.B.'s daily activities were age appropriate and not hindered by asthma. (Doc. No. 7, Tr. 25).

An asthma attack in Listing 3.00C is defined as:

> prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

Listing 3.00C.

The visits to the clinic in 2010 through 2011 also do not support that B.I.B. suffered an "asthma attack" as defined by Listing 3.00C. The clinic notes describe B.I.B. as having "asthmatic cough," "runny nose," "coughing," "c/o asthma attack, running nose," "c/o asthma," "c/o pain, runny nose, headache, fever." (Doc. No. 7, Pg ID 351, 352, 368, 369, 455, 458, 463) As noted by the ALJ, the medical records contain treatment records from various emergency room visits. However, this Court's review of the Children Hospital's Emergency Room records does not show, since 2010, that B.I.B. suffered an "asthma attack" as defined by Listing 3.00C. The March 16, 2010 emergency treatment notes indicate that B.I.B. "had 1 DuoNeb treatment, reevaluated, clear to auscultation, good air exchange without wheezing, rales, rhonchi, or retractions, ... with a final diagnosis of asthma exacerbation." (Doc. No. 7, Pg ID 330) B.I.B. was discharged in stable condition. (Doc. No. 7, Pg ID 330) The April 25, 2010 emergency treatment notes indicate that the chief complaint was of a rash, with runny nose and nasal congestion, a mild cough, but no wheezing or shortness of breath. (Doc. No. 7, Pg ID 342-43)

Based on a review of the ALJ's determination and the medical record, the Court finds that the ALJ's decision was substantially supported. B.I.B.'s asthma symptoms are not medically disabling.

### 3. Step 3: Functionally Equals Listing

The ALJ applied the functionally equals listing concluding B.I.B. did not meet any of the six domains listed. (Doc. No. 7, Pg ID 60) As to the acquiring and using information domain, the Court finds that the evidence substantially supports the ALJ's finding of no limitations in this first domain. B.I.B.'s teachers noted she was a very good student. Despite missing several days of school and being late, B.I.B. continues to perform at her grade level. B.I.B. also participates in gym class, but limits her physical activities, including not going outside for recess because of weather changes. B.I.B's mother testified that she loves to spell and read.

For the same reasons, B.I.B. is able to attend and complete tasks at school and is able to play with the other children in the neighborhood, which supports the ALJ's finding that B.I.B. has no limitation in this second domain.

Regarding the third domain, interacting and relating with others, B.I.B.'s teachers indicate she interacts well with her classmates and B.I.B.'s mother testified that she plays with other children in the neighborhood. There is no indication by the teachers or B.I.B.'s mother that B.I.B. is unable to interact or relate with other children or family members. The ALJ's finding in this third domain is supported by the record.

B.I.B.'s mother testified that B.I.B. is able to play with other children, to ride her bicycle, to draw, play video games and read. B.I.B's teachers noted B.I.B. is a good student and is able to participate in gym. Although B.I.B. is limited in her participation during gym class and is unable to go outside for recess, there is no evidence that B.I.B.'s asthma extremely limited her ability to move about and manipulate objects. The ALJ's finding as to this fourth domain of moving about and manipulating objects is substantially supported by the evidence.

The ALJ's finding as to the fifth domain that B.I.B. is able to care for herself in light of her age is properly supported since there is no testimony that she is unable to do so.

The ALJ also supported the findings that as to the sixth domain, health and physical well-being. The medical evidence shows that B.I.B.'s asthma flares up intermittently and is controlled. The clinic and emergency visits have been noted above, which do not establish that B.I.B. suffers asthma attacks on a regular basis or that such attacks were not controlled after treatment. B.I.B.'s asthma symptoms do not establish an extreme limitation which interferes very seriously with B.I.B.'s ability to independently initiate, sustain, or complete any of her activities, including school work or play.

Although B.I.B.'s asthma symptoms flare up when the weather changes which affects the health and well being domain, this evidence does not establish an "extreme" limitation in this domain. The doctors who evaluated B.I.B. concluded that B.I.B. had no limitations in any domain, except health and well-being, and they noted that B.I.B. had less than marked limitations in that domain. The Court finds the ALJ's conclusion that B.I.B. has not had an impairment or combination of impairments resulting in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain is properly supported by the record. The ALJ properly applied the three-step analysis required to determine whether B.I.B. is disabled. The ALJ's findings are a fair assessment of the record. In light of the deference the Court must give the ALJ's findings, the Court affirms the Commissioner's denial of benefits.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment **[Doc. No. 11]** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment **[Doc. No. 14]** is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** with prejudice.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: November 4, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 4, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager